USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7|16|19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEPHEN P. BROWN,

                Petitioner,

-against-

UNITED STATES OF AMERICA,

                Respondent.

Case No. 18-CV-5085(NSR)

(Related Criminal Action:
Case No. 140-CR-659(NSR))

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Petitioner Stephen P. Brown ("Brown") was sentenced to 292 months on one count of attempting to entice an undercover officer, who posed as an eleven-year-old willing to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). Brown appealed his sentence to the Second Circuit, who denied his appeal. Brown now moves pursuant to 28 U.S.C. § 2255 ("Section 2255") to vacate, set aside or correct his sentence. The Government opposes the motion. For the following reasons, the motion is DENIED.

## BACKGROUND

### I.    Brown's Offense Conduct

    The New York State Police Department began investigating Brown in January 2014, after an 11-year-old-boy ("Victim 1") reported that Brown abused him during the summers of 2011 and 2012. (Pre-Sentence Report "PSR" ¶) On or about January 14, 2014, a New York State Police Investigator ("UC") posed as Victim 1 and began exchanging emails and messages with Brown. (PSR ¶ 12) In these messages, Brown asked sexually explicit questions and sent UC sexually explicit images. (PSR ¶¶14-15) Eventually, Brown and UC discussed plans to engage in sexual activity. (PSR ¶16). During a search of Brown's apartment, officers found a computer containing

thousands of images of child pornography, including photos of Victim 1 from August 2012. (PSR ¶ 17). The subsequent investigation revealed that Brown sexually abused three more boys in the 1980's and 1990's. (PSR ¶ 40).

## II. Pre-trial Proceedings

On or about October 6, 2014, Brown was indicted on three counts involving, *inter alia*, the sexual exploitation of a child in violation of 18 U.S.C. §§2251(a) and (e), and attempting to entice an undercover officer posing as a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b)(1). (ECF No. 9, Indictment). Subsequently, on November 11, 2015, Brown pled guilty to Count 3 of the indictment, pursuant to a plea agreement, to attempted enticement of a minor to engage in sexual activity. (Plea Agreement ("PA") at 2.) The PA provided for a sentencing Guidelines Range of 292 to 356 months of incarceration, with a mandatory minimum sentence of 120 months. (*Id*. at 3.) The PA also required the parties to agree that neither a downward nor an upward departure from the stipulated Guidelines Range was warranted. (*Id.* at 3.) The agreement warned "the sentence to be imposed upon the defendant is to be determined solely by the Court. It is further understood that the Guidelines are not binding on the Court…This Office cannot, and does not, make any promise or representation as to what sentence the defendant will receive." (PA at 4.) As a condition of his plea, Brown agreed to waive his right to appeal and collaterally attack his sentence. *Id*.

## III. Brown's Guilty Plea

Brown appeared before the Court on December 9, 2015 and plead guilty pursuant to the PA. The Court confirmed that Brown had ample opportunity to discuss the consequences of entering a guilty plea with his attorney and that he was satisfied with his attorney's representation. (Plea Transcript ("PT") 6:17 – 24.)

> THE COURT: Have you had a full opportunity to discuss your case with your attorney and to discuss the consequences of entering a plea of guilty?
>
> DEFENDANT: Yes, I have. Thank you.
>
> THE COURT: All right.
>
> Are you satisfied with your attorney and his representation of you?
>
> DEFENDANT: Yes, sir, your Honor, I am.

Based on Brown's responses to the Court's questions and observations of Brown's demeanor, the Court found Brown fully competent to enter an informed plea. (PT 6:25-7:2.) During the plea allocution, Brown confirmed that he read and reviewed a copy of the indictment with his attorney, and the Government summarized the charges. (PT 9:11-10:17.) The Court confirmed that Brown understood the elements of the crime charged and that the Government would have to prove each and every element of the charged crime beyond a reasonable doubt if the case were to go to trial. (PT 10:18 – 11:2.) The Court then made sure Brown understood the possible penalties and confirmed that Brown had discussed all of the possible penalties with his attorney as outlined in the PA. (PT 11:15-23.) The Court confirmed that Brown discussed the sentencing guidelines with his attorney. (PT 12: 9-13.) The Court went on to explain and confirmed that Brown understood the Court has the authority to impose a sentence higher or lower than the stipulated guideline range. (PT 12:21-13:4.) The Court also explained and confirmed that Brown understood that should his sentence be different or greater than what he expected or from what his attorney predicted, Brown would still be bound by his guilty plea. (PT 13:6-23.)

> THE COURT: Mr. Brown, under the current law, there are sentencing guidelines that judges must consider in determining your sentence. Have you spoken to your attorney about the sentencing guidelines?
>
> THE DEFENDANT: Yes, sir, I have.
>
> THE COURT: Do you understand that the Court will not be able to determine the sentence applicable under the guidelines until after a presentence report has been completed by the Probation Office, and after you and the government have had a

chance to challenge any of the facts reported by the Probation Office? Do you understand this?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that even after it is determined what guideline range applies to your case, the court has the authority, in some circumstances, to impose a sentence that is higher or lower than the sentence called for by the guidelines based on other sentencing factors described in Title 18, United States Code, Section 3553(a), which the court must consider, although the court does not have the authority to exceed any applicable statutory maximum or order a sentence less than any statutory minimum? Do you understand this?

THE DEFENDANT: Yes, sir.

THE COURT: Do you also fully understand that even if your sentence is different from what your attorney or anyone else told you it might be or if it is different from what you expect, you will still be bound to your guilty plea and you will not be allowed to withdraw your guilty plea. Do you understand this?

THE DEFENDANT: I do understand that, yes.

Next, the Court confirmed that Brown reviewed the Plea Agreement, that he discussed it with his attorney, that he signed it, and that he fully understood the agreement before signing it. (PT 14:19.) The Court confirmed that Brown understood that failing to comply with the agreement would release the Government from any obligations imposed by the agreement and that Brown entered into the PA voluntarily. (PT 14:20 – 15:17.)

> THE COURT: I have a copy of the plea agreement. It is dated November 11th, 2015. Mr. Brown, did you review the plea agreement?
>
> THE DEFENDANT: I'm sorry, sir?
>
> THE COURT: Did you review the plea agreement, Mr. Brown?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Did you sign the plea agreement?
>
> THE DEFENDANT: Yes, sir, I did.
>
> THE COURT: And did you sign it after discussing the terms of the plea agreement with your attorney?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Okay. And did you fully understand the agreement before signing it?

THE DEFENDANT: Yes, sir, I did.

THE COURT: Okay. I'm going to deem this marked as Court Exhibit number 1, and it should reflect that not only has it been signed by the U.S. Attorney's Office, but it also has been signed by Mr. Stephen Brown and his attorney.

Mr. Brown, does this letter agreement constitute your entire and total understanding of the agreement between the government and your attorney?

THE DEFENDANT: Yes, sir.

THE COURT: In entering into this agreement, do you fully understand and voluntarily consent to comply with all of the provisions in the plea agreement that specify any commitments that you're making by signing the agreement?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that, by signing the plea agreement, you're promising to comply with all of these commitments and that your failure or refusal to do so would release the government from any obligation imposed on it by the agreement?

THE DEFENDANT: Yes, I do. Thank you.

THE COURT: Has anyone offered you any inducements or threatened you or forced you to plead guilty or to enter into the plea agreement.

THE DEFENDANT: No, your honor.

The Court confirmed that Brown understood that the Court does not need to abide by the Governments sentencing recommendation, and if the Court choses to do so, Brown would not be able to withdraw his plea. (PT 15:19-24.) The Court confirmed that Brown understood that by signing the plea agreement, he agreed to waive any and all right to attack his sentence on direct appeal or collaterally, or to seek a sentence modification of any sentence within the guidelines range. (PT 15:25-16:25.)

THE COURT: Do you understand that the court is completely free to disregard the government's recommendation or position with regard to your sentence and to impose whatever sentence it believes is appropriate under the applicable guidelines and circumstances and, in that event, you have no right to withdraw your plea?
THE DEFENDANT: Yes; I understand that.

THE COURT: I'm going to ask you some questions about the plea agreement.

Do you understand that the plea agreement does not bind any federal, state or local prosecuting authority other than the U.S. Attorney's Office for the Southern District of New York?

5

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that you have agreed to waive any and all right to attack your sentence either on direct appeal or collaterally or to seek a sentence modification of any sentence within or below the stipulated guidelines range of 292 to 365 months imprisonment with a mandatory minimum of 120 months? Do you understand this?

THE DEFENDANT: Yes, sir, I do.

THE COURT: Do you understand that you have agreed that you will seek neither a downward nor an upward departure or adjustment from the stipulated guidelines range sentence which is calculated to be 292 to 365 months imprisonment with a mandatory minimum of 120 months along with an applicable fine range of $25,000 to $250,000.

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that you have agreed not to appeal any term of supervised release less than or equal to the statutory maximum or any fine that is less than or equal to $250,000?

THE DEFENANT: Yes, sir.

Subsequently, the Court asked Brown if he still wanted to plead guilty, and Brown said he did. (PT 28:20-24.) The Court confirmed that he was pleading guilty because he was in fact guilty and nobody was forcing him to do so. (PT 28:25-29:6.) After determining that Brown made a knowing, voluntary and intelligent waiver of his rights, the Court accepted Brown's guilty plea. (PT 29:6-13.)

IV. **The Sentencing**

Brown appeared on March 24, 2016 for a sentencing hearing. The Government requested a sentence at the high end of the guideline range of 292 to 365 months. (Sentencing Transcript "ST" 7:20-24.) Brown's counsel advocated for 120 months, based on an expert psychiatric report which concluded that Brown presented a remote risk of reoffending and did not present a danger to the community. (ST 31:22.) At the hearing, it was revealed that defendant's psychologist, who prepared the report, did not know about Brown's prior history of abusing young boys around the victim's age at the time he examined Brown. (ST: 8:10-13.) As the Court questioned Brown's

6

counsel on whether the psychological evaluation was truly independent, the Court mentioned his 12-year-old son. (26:12 – 27:17.)

> THE COURT: Can I ask a question? And I don't mean to interrupt, but this is something that I was a bit troubled.
>
> This was not an independent examination that was conducted; was it?
>
> MR. WILLSTATTER: Well, I knew of Dr. Krueger's work – when you say independent –
>
> THE COURT: I'm going to interrupt you. I have this really strange and bad habit. I ask really direct questions, direct questions.
>
> MR. WILLSTATTER: I didn't know what you meant by independent.
>
> THE COURT: Independent. Someone isn't hired by a particular party and doesn't have a stake in the outcome.
>
> MR. WILLSTATTER: He doesn't have a stake in the outcome. We retained him to do this evaluation that is clear. And he did –
>
> THE COURT: Is it? Is it an independent evaluation, is my question. And it's a very simple, direct question, and it could be answered, with all due respect, I have a 12-year-old son, a 11-year-old son, if I was to ask him that question, he knows exactly what I'm getting at. He knows exactly what I mean by that. And he can either tell me "yes" or "no."
>
> MR. WILLSTATTER: Well, if the court means is did we subject Mr. Brown to a further evaluation at the request of the Probation Department, the answer is no.
>
> So if that's what the Court means by an independent evaluation no. I do not think that would benefit him to go through the whole thing again. No.
>
> THE COURT: Okay. So it was not, to answer my own question, because that's what I typically have to do when I ask an attorney a question, it was not an independent examination.

When asked whether they believed the Court would benefit from hearing an independent psychologist chosen by probation, Brown's counsel replied "It's my opinion and my experience that those evaluations don't add anything to what's already before the court." (ST 20:9-20). When pressed further on whether it would be beneficial to obtain an independent psychiatric report, Brown's counsel stated "I don't think so." *Id.*

After taking all the relevant factors into consideration, including the Title 18 U.S.C. § 3553 factors and the stipulated Guidelines Sentencing range of 292 to 365 months, the Court sentenced Defendant to a term of 292 months of incarceration to be followed by a lifetime term of supervised release. (ST 41:20-24.) The sentence imposed was within the agreed upon Guidelines Sentencing range.[1]

## V. The Appeal

On May 11, 2016, Brown filed an appeal in the Second Circuit, calling into question the length of his sentence. Brown claimed that the Court's imposition of a 292 month period of incarceration was procedurally unreasonable because: (1) the Court disregarded his expert report on the ground that the expert lacked independence; (2) the Court created the appearance of bias when he referred to his own son during sentencing; (3) the Court rejected the probation office's recommendation for a downward variance in the sentencing with no explanation; and (4) the sentencing was contradictory because the Court noted that in its view, Brown had a number of past victims and also asserted that the victims had not affected the sentence imposed. (Appellate Brief ("AB") 14-17.)

The Government moved to dismiss the appeal as barred by the waiver of appellate rights contained in Brown's plea agreement. The Second Circuit granted the Government's motion and dismissed the appeal because "[a]ppellant has not demonstrated that the waiver of his appellate rights is unenforceable under *United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000)." (PM, Exh. 15, *United States v. Stephen Brown*, 16-1978, United States Court of Appeals, Second Circuit, Order of Dismissal).

---

[1] The Court notes that in the Pre-sentence Report dated March 7, 2016, the probation officer recommended that Brown be sentenced to a term of 240 months incarceration, twice the mandatory minimum. *See PSR*. The PSR also contains information regarding Brown's prior history of sexual assaults of multiple minors. *Id*. Brown's counsel requested a sentence of 120 months, the mandatory minimum.

8

## VI. The Petition for Rehearing

On May 11, 2016, Brown filed a Petition for Reconsideration or Rehearing to the Second Circuit seeking to cure the deficiencies in his prior appeal and the plea waiver arguments. (Panel Reconsideration "PR" at 1.) Brown asserted that the Circuit Court misapplied prevailing caselaw when it determined that Brown had failed to "demonstrate that the waiver of his appellate rights is unenforceable." More specifically, Brown asserted that the Court misapplied the holding in *United States v. Gomez-Perez*. The Second Circuit denied Brown's motion for reconsideration and/or rehearing.

## VII. Brown's Current Constitutional Claims

Brown now moves pursuant to Section 2255, seeking to "be discharged from his unconstitutional conviction and/or sentence." (Petitioner's Memorandum in Support of Petition ("PM"), Page 3). Though Brown's moving paper references vacatur of his guilty plea, the vast majority of his contentions center on vacating his sentence. Brown asserts that his plea agreement waiver should not apply because in sentencing him to a lengthy term of incarceration, the Court violated his Fifth Amendment right to due process and his Sixth Amendment right to counsel. Despite the existence of the plea agreement waiver, Brown argues these claims are not barred because the District Court failed to articulate a rationale for his sentence.

Brown's arguments concerning the alleged Fifth Amendment due process violations mirror the claims and arguments made in his appeal to the Second Circuit. He asserts, *inter alia*, that: (1) the sentencing was improper because the court failed properly consider or credit Defendant's expert report which opined that Brown posed a low risk of re-offending, warranting a lower sentence; (2) the Court did not provide an express reason for disregarding the opinion of defendant's expert; (3) the Court expressed bias when mentioning his son; (4) the Court failed to

9

articulate basis for not following probations recommended sentence of 240 months; and (5) the Court was internally inconsistent in referencing Brown's prior history of misconduct. (PM at 16-25.)

Brown's Sixth Amendment claims for ineffective assistance of counsel are, *inter alia*, as follows: (1) defense counsel made poor strategic decisions by failing to sufficiently rely on and referencing relevant caselaw, such as *U.S. v. Dorvee*, in advocating for a variance from the Sentencing Guidelines and a sentence of the statutory minimum; (2) although referenced in his sentencing memorandum, Counsel did not sufficiently argue at the sentencing hearing that *U.S. v. Dorvees*, as well as other relevant caselaw, supported the imposition of a shorter sentence; (3) counsel should have made Brown available for an independent psychiatric evaluation; (4) counsel should have presented oral arguments at the arguments concerning each of the 18 U.S.C. § 3553(a) sentencing factors; and (5) counsel provided Brown with insufficient legal advice concerning his plea agreement and expected sentence. (PM at 26-34.)

## SECTION 2255 STANDARD OF REVIEW

As a general rule, "[i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Bousley v. United* States, 523 U.S.C. 614, 621 (1998) (quoting *Mabry v. Johnson,* 467 U.S. 504, 508 (1994). Under Section 2255 an exception is made when the sentence was imposed "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack" 28 U.S.C. §2255(a).

Under Section 2255, a court must grant a petitioner a hearing unless the allegations in support of the motion are "vague, conclusory, or palpably incredible" *Gonzalez v. United States,*

722 F.3d 118, 130 (2d Cir. 2013) (quoting *Machibroda v. United States* 368 U.S. 487, 795 (1962). "To warrant a hearing, the movant must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [a defendant] to relief" *Id.* "Whether there is a genuine issue of material fact depends on the sufficiency of [the petitioner's] factual allegations." *United States v. Aiello*, 814 F.2d 109, 113-14 (2d. Cir. 1987).

A Section 2255 motion should be narrowly limited "to preserve the finality of criminal sentences and to efficiently allocate judicial resources. *Granziano v. United States,* 83 F.3d 587, 590 (2d Cr. 1996). Collateral attacks are available on a final judgement under Section 2255 only when there is "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in complete miscarriage of justice'" *Graziano v. U.S.*, 83 F.3d 587, 589 – 90 (2d Cir. 1996) (quoting *United States v. Bokun,* 73 F.3d 8,12 (2d Cir. 1995)). Further, Section 2255 cannot be used to relitigate questions raised and considered on direct appeal. *Riascos-Prado v. U.S.*, 66 F.3d 30, 33 (2d Cir. 1995) (finding a defendant could not contend that he had ineffective counsel for failing to explain the sentencing guidelines to him because it had already been rejected on his direct appeal); *See also U.S. v. Pitcher*, 559 F.3d 120, 124 (2d Cir. 2009) (holding the district court erred when it found that the defendants counsel provided ineffective assistance on a Section 2255 motion by giving him an overly optimistic assessment of his prospects at trial when it had already been raised on direct appeal).

## DISCUSSION

### I. Brown's Due Process Claims Are Barred

Brown's due process claims are barred because he knowingly waived his right to appeal said claims, pursuant to the terms of his plea agreement, and the Second Circuit has already ruled that he failed to demonstrate that the plea agreement contained an unenforceable waiver of his appellate rights. (PM, Exh. 15, *United States v. Stephen Brown*, 16-1978, United States Court of Appeals, Second Circuit, Order of Dismissal *citing United States v. Gomez-Perez,* 215 F.3d 315 (2d Cir. 2000)). The Second Circuit has repeatedly recognized the validity of waiving the right to appeal and collaterally attack a sentence in a plea agreement. *Id.* at 318; *United States v. Rosa,* 123 F.3d 94, 97 (2d Cir. 1997); *United States v. Maher*, 108 F.3d 1513, 1531 (2d Cir.1997); *United States v. Jacobson*, 15 F.3d 19, 22-23 (2d Cir.1994); *United States v. Salcido-Contreras*, 990 F.2d 51, 53 (2d Cir.1993) (per curiam); *United States v. Rivera*, 971 F.2d 876, 896 (2d Cir.1992). As long as a waiver is made knowingly, voluntarily, and competently, a defendant may not collaterally attack his sentence. *United States v. Gomez-Perez,* at 319. Under limited circumstances, a defendant can collaterally attack or appeal a sentence after having waived his right to appeal in a plea agreement, including: (1) "when the waiver was not made knowingly, voluntarily, and competently"; (2) "when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases"; (3) "when the government breached the plea agreement"; or (4) when the sentencing court failed to enunciate any rationale for the defendant's sentence" amounting to "an abdication of judicial responsibility." *Id.* (internal citations omitted). These exceptions "occupy a very circumscribed area of our jurisprudence." *Id.* "Accordingly, we have upheld waiver provisions even in circumstances where the sentence was

conceivably imposed in an illegal fashion or in violation of the Guidelines, but yet was still within the range contemplated in the plea agreement" *Id.*

On November 11, 2015, Brown signed a plea agreement which contained the following language: "it is agreed (i) that defendant will not file a direct appeal nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255." (PA at 4.) The waiver provision is clear and unambiguous. On December 9, 2015, Brown appeared before this Court and plead guilty pursuant to the PA. During the plea hearing, this Court asked Brown, "Did you review the plea agreement, Mr. Brown?" (PT 14:7-8.) Brown responded "Yes, sir." (*Id.* at 14:10.) The court asked Brown whether he "sign[ed] the plea agreement?" (*Id.* at 14:12.) Brown responded "Yes, sir, I did." (*Id.* at 14:13.) The court asked Brown "did you sign it after discussing the terms of the plea agreement with your attorney?" (*Id* at 14:15.) Brown again responded affirmatively, saying, "Yes, sir." (*Id.* at 14:16.) Finally the court specifically asked whether Brown understood that he had waived the right to appeal or collaterally attack his sentence, when asking "Do you understand that you have agreed to waive any and all right to attack your sentence either on direct appeal or collaterally, or to seek a sentence modification of any sentence within or below the stipulated guidelines range of 292 to 365 months imprisonment with a mandatory minimum of 120 months? Do you understand this?" (*Id.* at 17:7-12.) Brown replied. "Yes, sir, I do." (*Id.* at 16:13.) Although Brown now asserts his attorney did not explain he was waving his appellate rights by signing the plea agreement, all evidence including the PA and the transcript of his plea allocution, bely Brown's assertion. The record demonstrates that Brown reviewed the PA and understood he was waiving his rights to appeal and collaterally attack his sentence upon executing and agreeing to be bound by its terms.

Brown asserts the appellate waiver is not enforceable because the Court gave no justification for the imposed sentence and the lengthy sentence should be deemed a miscarriage of justice under *Gomez–Perez*. Brown's claims, however, are barred on the basis that the Second Circuit has already rejected these contentions and denied his appeal. (PM, Exh. 15, *United States v. Stephen Brown*, 16-1978, United States Court of Appeals, Second Circuit, Order of Dismissal). In *Riascos-Prado v. United States*, a defendant appealed his conviction on the grounds that he was provided with ineffective assistance of counsel because his attorney failed to explain the consequences of his guilty plea. *Riascos-Prado v. U.S.*, 66 F.3d 30, 32 (2d Cir. 1995). The Second Circuit denied his appeal, and defendant subsequently filed a motion to vacate his sentence pursuant to Section 2255, again arguing that his counsel was deficient in failing to explain the sentencing guidelines. *Id.* The Second Circuit rejected the defendant's contentions and denied his request to vacate his sentence because the defendant had previously argued on direct appeal "that his counsel did not adequately explain the sentencing guidelines to him prior to the entry of his guilty plea," and the district court deemed such contention as "simply a slightly altered reticulation of a claim that was rejected on his direct appeal." *Id; see also United States v. Pitcher*, 559 F.3d 120,122 (2d Cir. 2009) (holding a defendant who had appealed his sentence on the grounds that his counsel provided ineffective assistance by giving him an overly optimistic assessment of his prospects at trial could not attack his sentence on a on a Section 2255 motion when it had already been raised on direct appeal).

Here, Brown is similarly trying to attack his sentence by reticulating a claim that was rejected on his direct appeal. On his direct appeal to the Second Circuit, Brown argued his sentencing was improper because: (1) the Court disregarded expert testimony finding that the expert lacked independence; (2) the Court created the appearance of bias when Judge Román

referred to his son during sentencing; (3) the Court rejected the probation office's recommendation for a downward variance in the sentencing with no explanation; and (4) that the sentencing was contradictory because the Court noted that, in its view, Brown had a number of past victims and also asserted that the victims had not affected the sentence imposed. (Appellate Brief ("AB") at 14-17.) Brown is in essence raising the same arguments here by stating: (1) the sentencing was improper because the expert report was not considered; (2) when disregarding this expert testimony, the Court did not express a reason for doing so; (3) the Judge's passing reference to his own son reflected bias; (4) the Court failed to articulate why it did not follow the probation officer's recommended sentence; and (5) the Court was internally inconsistent in referencing Mr. Browns criminal history. (Motion to Vacate at 17-25.)

These are the very same arguments raised before the Second Circuit. The substance of Brown's motion is an attempt to re-assert arguments and relitigate issues previously rejected by the Second Circuit. Accordingly, Brown's Due Process claims are barred.

## II. Brown's Claim of Ineffective Counsel Lacks Showing of Unreasonableness and Prejudice

If a petitioner fails to raise a claim on direct appeal, he is barred from raising that claim in a Section 2255 petition "unless he can show cause for his procedural default and actual prejudice resulting from the error;" *Riascos-Prado*, 66 F.3d at 34; *see also Barton v. U.S.*, 791 F.2d 265, 267 (2d Cir. 1986). An ineffective assistance of counsel claim can be raised for the first time on a Section 2255 petition, but must amount to a fundamental defect which resulted in a miscarriage of justice. *U.S. v. Johnson,* 615 F.2d 1125, 1127 (5th Cir. 1980). Brown asserts that his counsel made five errors, which collective amount to a Sixth Amendment Constitutional violation.

Generally, to establish an ineffective assistance of counsel claim, in violation of the Sixth Amendment, a defendant must establish: (1) that his counsel's performance fell below an objective

standard of reasonableness, and (2) that counsel's performance resulted in prejudice. *U.S. v. Leslie*, 103 F.3d 1093, 1099 (2d Cir. 1997) "There is a presumption that counsel's assistance fell within a wide range of reasonable professional assistance." *U.S. v. Leslie*, 103 F.3d 1093, 1099 (2d Cir. 1997). "A guilty plea cannot be attacked based on inadequate legal advice unless counsel was not 'a reasonably competent attorney' and the advice was not 'within the range of competence demanded of attorneys in criminal cases.'" *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (quoting *McMann v. Richardson,* 397 U.S. 770, 772 (1970)) Therefore, "the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id*. at 688. Actions or omissions that could be considered sound trial strategy do not constitute ineffective assistance. *U.S. v. Berkovich*, 168 F.3d 64, 68 (1999). Further, "a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. *Washington*, 466 U.S. at 689.

Once a defendant has shown their counsel's conduct is unreasonable, they must show it likely resulted in prejudice. "[A]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgement of criminal proceedings if the error had no effect on the judgement." *Id.* at 691 (1984). "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test." *Id.*at 693. A petitioner must, therefore, show that there is "a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceedings would be different." *Id.* at 695. To warrant the granting of a hearing on an ineffective assistance of counsel claim, a petitioner need only establish that he has a plausible claim, not that

he will necessarily succeed on the merits. *Armienti v. United States,* 234 F.3d 820, 823 (2d Cir. 2000).

Brown contends that his counsel should have more forcefully argued that well established Second Circuit case law supported a sentence of less than 292 months and that the decision and reasoning reached in *United States v. Dorvee* warranted a downward guidelines departure. *See United States v. Dorvee,* 616 F.3d 174 (2d. Cir 2010). In *Dorvee*, the Second Circuit determined the trail court's sentencing of a defendant convicted of possession and distribution of child pornography was unreasonable when the Court failed to give due consideration to the opinion of multiple expert witnesses who opined that the defendant was not likely to engage in sexual conduct with a child. *Id.* at 183. The Court noted that in addition to the proffered expert opinions, the defendant had never had any actual contact with children under the age of 14, other than taking non-explicit photographs of children's feet in public places. *Id* at 184.

The present case however, is materially distinguishable from *Dorvee*. Here, the only expert who proffered an opinion that Brown was unlikely to reoffend was unaware of his past sexual contact with multiple child victims. Defendant's reliance on *Dorvee* is misguided and would not have made a difference in his sentencing. During the hearing, the Court determined the facts and holding in *Dorvee* were distinguishable from the current case. (ST 42:13-25.)

> THE COURT: In determining the sentence, the Court reviewed the case *United States versus Dorvee,* 616 F.3d 174 Second Circuit at 2010 presented by the defendant for the proposition that 240 months as recommended by the probation for first time offender was substantively and procedurally unreasonable. The instant case, however is distinguishable from *Dorvee*. In *Dorvee*, the defendant never had any contact with an actual minor and the Court did not think that the defendant would initiate such behavior or contact. In stark contrast in the instant case, Brown, Mr. Brown has a prior history of initiating and engaging in sexual activity with minors, which Brown does not contest, is evidenced by the defendant's letters of March 22, 2016.

17

Hence, the Court was already aware of and contemplated the relevance of *Dovree*. Although Brown disagrees with his counsel's decision to not heavily rely on the applicability of the *Dorvee* holding to his case, the record clearly demonstrates that the Court did consider the legal principals outlined in *Dovee* and determined such principals were inapplicable. Stated differently, the Court had a sound basis for determining that Brown's circumstances differed from those in *Dorvee*. Accordingly, Brown has failed to make a showing of prejudice warranting the denial of his motion.

Brown next contends that his counsel should have made Brown available for an independent psychological evaluation. During Brown's sentencing, the Court asked whether he would benefit from an independent psychological evaluation. (ST 20:9-20.) Brown's counsel decisively responded that he did not think Brown would benefit from an independent evaluation organized by probation. *Id.* Given the fact that Brown's expert was unaware that Brown had a history of sexually molesting other children, it is not unreasonable to assume that Brown's counsel intentionally chose not to submit Brown to an independent psychological evaluation which would have likely had made relevant inquiry into his past . In short, the court finds that it was strategically reasonable for Brown's counsel to forego an independent evaluation and recognized that an independent psychologist would have likely disagreed with their own expert, subjecting Brown to the possibility of sentence well beyond the mandatory minimum sought by Brown and his counsel. Such strategy would appear to be sound and cannot be said to be unreasonable.

Brown next vaguely asserts that his counsel should have addressed more of the 18 U.S.C. § 3552(a) sentencing factors. Like the *Dorvee* arguments, Counsel's written submission addressed each of the relevant 18 U.S.C section 3553(a) factors. Although Brown's counsel did not orally address each factor individually at the sentencing hearing, the documented evidence demonstrates that each factor was in fact reviewed and addressed by counsel. Even if the Court were to determine

18

that counsel could have done a better job, Brown does not identify what information would have been useful for the Court to know and how not knowing such information was prejudicial. Since these allegations are so vague, the Court need not conduct a hearing. It is well settled, under Section 2255, that courts are not required to conduct a hearing when allegations are "vague, conclusory, or palpably incredible" *Gonzalez,* 722 F.3d 118, 130 (2d Cir. 2013) (quoting *Machibroda v. U.S.* 368 U.S. 487, 795 (1962).

Finally, Brown argues that his counsel gave him deficient advice concerning his plea agreement and expected sentence. Brown claims his counsel failed to thoroughly explain the plea waiver and that it meant he was waiving his right to appeal and collaterally attack his sentence. Brown's contention, however, is contradicted by his oral statements made under oath during his plea allocution. The court asked Brown:

> THE COURT: Do you understand that you have agreed to waive any and all right to attack your sentence either on direct appeal or collaterally or to seek a sentence modification of any sentence within or below the stipulated guidelines range of 292 to 365 months imprisonment with a mandatory minimum of 120 months? Do you understand this?

Brown responded affirmatively. The contention that counsel did not explain to Brown that he was waiving his appellate rights is belied by the record and lacks merit. A "petitioner cannot rest a claim on assertions of fact that are contradictory to the statements that he made, under oath, during his plea allocution." *Garcia-Leonard v. United States*, 2013 WL 6405176 at *12 (S.D.N.Y. 2013).

Brown also claims he was misled into thinking that he would likely be sentenced to the 120 months mandatory minimum. In *United States v. Sweeney,* the Second Circuit found an appellant could not withdraw their plea due to ineffective assistance of counsel when they estimated erroneously that his guideline range would be less than the 57 months he was sentenced to. *United States v. Sweeny,* 878 F. 2d 68, 70 (2d Cir. 1989). In *Sweeny*, even though defendant claimed that

19

he relied on his counsel's mistake to his detriment, the Second Circuit found the defendant's plea was made knowingly because he was aware that he faced a maximum prison term of ten years on each count, understood that the sentencing determinations are within the sole discretion of the judge, and was told (and confirmed he understood) that he was bound by his plea even if his sentence was longer than expected. *Id.* at 69. Even if Brown asked his counsel what his expected sentence would be and his counsel responded that he believed Brown would get 120 months, this was merely a prediction. Brown was well aware of the applicable sentencing range, knew that sentencing was in the sole discretion of the Court, and knew he could not withdraw his plea if the sentence turned out to be longer than he expected. A counsel is not infective merely because a sentencing prediction turns out to be wrong. *Id.* Therefore, Brown has not shown that his counsel was unreasonable, and has not shown a plausible claim for ineffective assistance of counsel.

As the decisions by Brown's counsel fall within the realm of reasonableness according to prevailing professional norms, Brown has failed to assert a plausible claim for ineffective assistance of counsel. Therefore, the Court need not hold a hearing on this matter, and the motion seeking to vacate, set aside, or correct Defendant's conviction and/or sentence is DENIED.

## CONCLUSION

For the foregoing reasons, Defendant's motion is DENIED in its entirety. The Clerk of the Court is respectfully directed to enter judgement for the United States and close this case.

Dated: July 16, 2019
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge